## CROSSLEY v. DOOLITTLE & FALKNOR.
### No. 6681.

Circuit Court of Appeals, Seventh Circuit.
April 14, 1939.

Russell Wiles, Marcus A. Hirschl, George A. Chritton, Jules Brady, and Chritton, Wiles, Davies, Hirschl & Dawson, all of Chicago Ill., for appellant.

Charles B. Cannon and Michael F. Mulcahy, both of Chicago, Ill., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

On this appeal the validity and infringement of a reissue patent to plaintiff are in issue. A "temperature control system" is the subject of the patent. Plaintiff asserts that it is to be found in use in radio broadcasting stations, of which there are about seven hundred and forty in the United States.

To use the patentee's own language, it relates more particularly to "a construction of a cabinet in which the temperature is kept substantially uniform."

Further, he says:

"Another object of my invention is to provide a heating and gas circulating arrangement within a main compartment of a cabinet structure for maintaining the temperature within an inner compartment thereof substantially constant.

"Still another object of my invention is to provide a plurality of compartments one within another in a cabinet structure and means within the outer compartment for uniformly heating and circulating the medium within it for controlling and main-

taining the temperature within the inner container substantially constant.

"A further object of my invention is to provide a container, the walls of which are composed of alternate layers of heat insulating and heat conducting material with a heat regulating and circulating arrangement for maintaining a compartment, the walls of which are composed of alternate layers of heat conducting and heat retaining material, positioned within the container at substantially uniform temperature.

"A still further object of my invention is to provide a heat control arrangement for frequency stabilizing devices, such as electro-mechanical vibrators, wherein the temperature of the medium surrounding the electro-mechanical vibrator is maintained substantially constant by enclosing the electro-mechanical vibrator within a container positioned within a substantially heat insulated container the inner medium of which is heated and temperature controlled."

The patent before us is a reissue patent bearing date of August 27, 1935, upon an application filed August 6, 1934. The original patent was issued, October 25, 1932, on an application filed February 11, 1929. Claims 6, 8, and 9 are in issue. Claim 6 also appeared in the original patent.

These claims read:

"6. In apparatus of the class described the combination of a container, a heating unit disposed in said container, a thermostat positioned in said container, said thermostat being connected with said heating unit whereby the operation of said heating unit is governed by the action of said thermostat, a second container positioned in said first mentioned container, a third container positioned within said second container, and means associated with said third container for retaining a thermometer."

"8. Apparatus of the character described, including; a container comprising alternate walls of heat conducting and heat insulating material, a heating unit disposed in said container; heat responsive means positioned in said container, whereby said heating unit is controlled; and a second container comprising alternate walls of heat conducting and heat insulating material positioned within said first container, said second container being adapted to house therein a vibrator element."

"9. In apparatus of the class described, the combination of a container, a heating unit disposed in said container, a thermostat positioned in said container, said thermostat being connected with said heating unit whereby the operation of said heating unit is governed by the action of said thermostat, a second container positioned in said first mentioned container, said second container comprising walls of alternate layers of heat conducting and heat insulating material, and a third container adapted to contain an electrically responsive crystal, said third container being positioned within said second container."

Plaintiff has given us an interesting account of one of the problems arising out of the construction of a broadcasting station. See marginal note.[1] He asserts that fractional temperature changes in the piezo electric crystal make control of frequency difficult, if not impossible. It was to secure uniformity of temperature that he labored and finally brought forth the invention for which the Patent Office gave him a patent.

The District Court upheld the defendant's attack upon the validity of the three

---

[1] A broadcasting band has a frequency ranging from 500 to 1500 kilocycles which is the equivalent of about one and one-half octaves or twelve notes on the piano. The respective broadcasting stations which have a separation equivalent to ten kilocycles represent one-fifth of the distance between notes on the piano. Those who erect or operate broadcasting stations are vitally interested in maintaining a definite frequency control which is as fine as a small fraction of the distance between two notes of a piano. In radio broadcasting construction there is what is called a piezo electric crystal, which is cut from a slab of quartz imported from Brazil, with fine dimensions obtained by methods prevailing in the optical field. Each quartz crystal has a center of resonance of its own. If the cells of the crystal change, then there at once occurs a change in the dimensions of the crystal and said crystal then operates on another frequency. The crystal is placed in the circuit of a vacuum tube and together with associated circuits in the vacuum tube system supply a substantially constant source of frequency. If, however, the cells of a crystal are changed, a change in the frequency of the oscillating system results.

claims of the patent. It did not pass upon the defense of infringement nor upon the purpose and effect of the alleged intervening rights.

While there is much enlightening discussion in plaintiff's brief of broadcasting stations, their construction and operation, the patent in suit nowhere mentions the subject of broadcasting. This fact, of course, does not exclude the application of the patent to such structures. It is here referred to because the complexities of radio construction with a piezo electric crystal in a vacuum tube are likely to produce an erroneous impression as to the baffling intricacies and technical nature of plaintiff's invention.

As a matter of fact, we are concerned solely with "a temperature control system" consisting of "a cabinet in which the temperature is kept substantially constant." It is not *why* the temperature should be kept constant that concerns us, for the necessity of constancy is conceded. The mechanism by which such constancy is attained and maintained constitutes the subject-matter of the patent. It might as well have concerned an egg in an incubator, or a cake in an oven, as a piezo electric crystal in a vacuum tube.

The only question is—Does the combination of the several elements of which one is a container, the second is a container inside the first container, and the third is a container inside the second, spell patentable novelty, where it also appears that a heating unit and a thermostat are located in one container, the latter being connected with and governing the heating unit. Add to these elements a thermometer and a place to attach it to one of the containers, and all claims are embraced.

While not prepared to condemn this combination as an aggregation, we are unable to find inventive genius manifested by its conception. The claims do not particularize nor limit the container, the thermostat or the heating unit except that in two of them the walls of the one or more containers were made of alternating heat-conducting and heat-resisting material.

At the date of this patent application, it was understood not only by men skilled in the art but by the public generally, as well, that walls with heat-insulating material, make for constancy of temperature. Likewise the utilization of a thermostat to avoid temperature variances was widely practiced.

While we recognize that it is the combination, as such, and not the individual elements thereof that determines novelty, our conclusion is strengthened by the prior art evidence which includes several patents covering what might generally be called temperature control systems. The development of temperature control in the incubator, the electric cooker and other utensils in the cooking art, and other somewhat similar arts, has led to the issuance of patents which have largely preempted the field which plaintiff sought to enter. Among such patents is one to Freas, No. 1,165,958, covering a "Heating System for Constant Temperature Baths," another, to Klopsteg, No. 1,683,359, covering a "Vacuum Oven"; also the patents to others disclosed by the record, make it impossible for us to sustain this patent.

Counsel for plaintiff has conscientiously and ably presented all the grounds upon which the validity of each of the three claims may be sustained. We are, however, unable to agree with the conclusion which he urges. Ours is the same conclusion as was reached by the District Court. As we view it, the field was already too well occupied,—the teaching of the similar and kindred art too well developed and known, to permit us to give plaintiff a position already attained and a recognition already achieved by others.

The decree is affirmed.